No. ——
First Circuit

## LEJEUNE, ET AL., v. LEJEUNE, ET AL.

(January 28, 1926, Opinion and Decree)

*(Syllabus by the Editor)*

1. **Louisiana Digest—Fraudulent Conveyances—Par. 125.**

A sale of land will be declared a simulation where, although a cash consideration was stated in the deed, the circumstances surrounding the transaction and the evidence preponderates to show that there actually was no consideration.

Appeal from the Parish of Acadia. Hon. W. W. Bailey,, Judge.

Action of Ellis LeJeune, administrator, et al., against Ernest LeJeune, et al., to have two sales of land declared simulations.

Judgment for plaintiff and defendant appealed.

Judgment affirmed.

Philip S. Pugh, of Crowley, attorney for plaintiff, appellee.

A. L. Fontenot and C. B. DeBellevue, of Crowley, attorneys for defendant, appellant.

LECHE, J. Plaintiffs and defendants are the forced heirs of the late Mrs. Elodie Matt LeJeune, and the present suit is to have declared null and void, as being a fraudulent simulation, two sales made by the deceased to her two sons who are defendants. Mrs. LeJeune died May 19, 1924, and the sales of two small tracts of land, one to each of her sons, Ernest and Aldes LeJeune, had been passed on the 30th of January, 1924. The considerations recited in the acts are respectively $340.00 and $500.00 cash. The vendor and the two vendees lived near Church Point in the Parish of Acadia, and they all went together to Crowley in the same parish, where the acts of sale were drawn up by a notary public and signed in his presence. There was no money or other equivalent consideration handed by the vendees to the vendor in the presence of the notary and attesting witnesses, at the time of the passage of the acts.

Both of the defendants were called as witnesses and cross-examined in conformity to the statute by the attorneys of plaintiffs, and their testimony is substantially the same. They both testify that on the morning of January 30, 1924, they each paid their mother $300.00 in five, ten and twenty-dollar bills, or altogether a total of $600.00, before going to the notary's office in Crowley, in the presence of three witnesses whom they had summoned for the purpose of witnessing the payments. That they then entered a waiting automobile with their mother and proceeded to Crowley, a distance of about twenty miles. Ernest claims that he had previously advanced his mother $40.00 and Aldes claims that he also had previously advanced her $200.00. The three witnesses, Julien Cormier, son-in-law of Aldes LeJeune; Felix Comeaux, nephew of Mrs. Aldes LeJeune, and Angolus LeJeune, brother-in-law of Ernest LeJeune and cousin of both defendants, · all swear that the money was handed, each bill separately in denominations of five, ten and twenty dollars, by each of the defendants to their mother, the two payments aggregating $600.00.

Mrs. Elodie LeJeune lived in a small building containing only two rooms, one used as a kitchen and the other as a bedroom, situated on land said to belong to her son, Ernest. This modest little abode was one or two hundred yards from the home of Ernest, and with Mrs. LeJeune was living her widowed sister, Mrs. Polite Doucet. These two old ladies, Mrs. LeJeune 73 years of age and Mrs. Doucet 70, thus lived in a simple and primitive manner.

644                    3   LOUISIANA APPEAL, REPORTS

Riches and luxury were unknown to them. They had a few chickens, and with the milk furnished to them by Ernest and other small material contributions from the two defendants, they managed to eke out a living. Their only source of revenue was pension which Mrs. LeJeune, as widow of a Confederate veteran, received quarterly from the State of Louisiana. It was under these conditions of living that Mrs. LeJeune is said to have received $600.00 in United States currency on January 30, 1924. The defendants say they do not know what their mother did with this money, whether she kept it on her person or whether she put it away in her armoir. Ernest, who lived within a stone's throw of his mother, frequently visited her, is said to have been kind to her, and yet he does not pretend to know what became of the $600.00. Mrs. LeJeune was ill for about two weeks and died on the 19th of May, a little over three months after she had received this sum of money. None of the other children knew anything about the $600.00 and Ernest and Aldes said nothing to them about it. They made no inquiries and did not search for it, except that Ernest says that, after his mother's death, he looked in her armoir to get some change to buy candles and he found no money.

Mrs. Doucet testified that on the morning her sister left to go to Crowley, she was in the house with her; she saw no money paid by defendants; that she rode in the automobile part of the way to her son's home and got out. This, of course, is denied by the defendants and their three witnesses. Mrs. Doucet says the only money she saw about that time was $15.00, left out of the pension money, which her sister had in her purse, and that also remains unaccounted for. Edouard Daigle, who is president and cashier of the Farmers Bank and Trust Company at Church Point, had

been consulted by these defendants in regard to the sale of January 30, 1924, and, though he was a notary public and apparently had earned their friendship, they nevertheless went to Crowley to consummate the transaction. He had advised them to give their mother a series of notes in order that she might have something to assist her in living, but his advice was not followed. Just previous to the filing of this suit at the request of plaintiffs' attorney, the defendants were interviewed by Daigle and told of the intention of their coheirs to demand a cancellation of these sales. Defendants' only reply was that they had paid their mother and would not give up the property. They avoided details as to the amount, manner and time of payment. They did not tell Daigle at that time nor at previous interview that they had already advanced part of the purchase price to their mother. The defendants are small farmers and, though Daigle would not say they were "impecunious", it is apparent from all the testimony that neither one of them is endowed with wealth.

It is simply incredible, considering the close and intimate relations between the defendants, especially Ernest, and their mother, that they should have paid her $600.00 in cash on January 30, 1924; that they should not have known what their mother did with this money; that they should not have discussed it with, or said something to the other children or to anyone else about it; that they should not have inquired what became of this money when their mother was on her death bed about three months later, without means even to buy candles for her bier, and that they should have maintained a Sphinxlike silence under these circumstances until the present suit was filed.

The trial judge thought the sales were

simulations and so do we, and the judgment appealed from is therefore affirmed.